*Southern Division*

**CLIFFORD JOHNSON**

v.

**FORE RIVER MOTORS, INC.**

*Present*: Nash, P. J., Cox & Sgarzi, JJ.

Case tried to *Kalus, J.* in the District Court of East Norfolk (Quincy). No. 17910.

*Cox, J.* This is an action of contract or tort in three related counts. One count is for breach of an implied warranty of merchantability of an automobile described as a Taunas two-door sedan which the plaintiff purchased from the defendant, a count for money had and received, to wit, the purchase price, and a count for deceit relating to the sale of the automobile. The count for money had and received is of no consequence as the plaintiff has retained the automobile and has elected to sue for damages. G. L. c. 106, §2-714 (St. 1957 c. 765, §1).

There was a finding for the defendant. The case was reported for our determination because the plaintiff claims to be aggrieved by (a) the exclusion of evidence, (b) the denial of certain of his requests for rulings of law, and (c) the judge's findings.

The action is essentially one for breach of warranty of merchantability, express and implied, and it is settled that an action of tort

as well as contract may be maintained for the breach.

> "It should not be the law, and by the weight of modern authority it is not the law, that a seller by positive affirmation induces a buyer to enter into a bargain can escape from liability by convincing the court that his affirmation was not an offer to contract. A positive representation of fact is enough to render him liable. The distinction between warranty and representation which is important in some branches of the law is not appropriate here."

Williston, Sales (Rev. Ed.) §197. *Carolet Corp. v. Garfield,* 339 Mass. 75, 79, 80. The rule is the same in the case of an implied warranty as in that of an express warranty. *Schuler v. Union News Co.,* 295 Mass. 350, 352, 353. The case was argued as a breach of warranty.

▮▮ The plaintiff bought the Taunas automobile from the defendant on or about September 22, 1959 for the use of his stepdaughter, Carol Nix, the wife of George Nix. The negotiations for the automobile were carried on by Carol Nix to whom alleged representations were made. We treat Mrs. Nix as a member of the plaintiff's family. Accordingly, any warranty extends to her as a "natural person who is in the family or household of the buyer". G. L. c. 106, §2-318 (St. 1957, c. 765, §1). The law prior to the effective date of the Uniform Commercial Code on October 1, 1958 was that an action for breach of warranty could be brought only

by the one to whom the warranty was given. *Kennedy v. Brockelman Brothers, Inc.* 334 Mass. 225; *Sullivan v. H. P. Hood & Sons, Inc.,* 341 Mass. 216, 223 and footnote.

The plaintiff first saw the automobile at the defendant's place of business the night before its delivery although he had previously signed at his home the papers involved in the transaction. He knew the automobile was a used and repossessed car. When he saw it, it was in a clean and polished condition. He testified that the salesman had represented it as a *one-owner car* which had been driven about 1000 miles. The represented mileage appears to have been true. There was evidence that the automobile had previously been sold to one Carol Bennett and that during her ownership it had been *involved in an accident.* The cost of repairs had approximated $1200. *It was first owned by 'one Catherine Martin, then by Mrs. Bennett, next by the finance company* which repossessed it and then by the defendant who acquired it from the finance company. Carol Nix, who negotiated for the purchase of the automobile, testified that Martin, the defendant's salesman, represented the automobile as having been repossessed by the defendant; that its mileage was about 900; that there was no reference to the accident in which the automobile had been involved, although as to this there was other evidence that Mrs. Nix did know it had been in an accident; that when she first drove the car she could not steer it as it would veer to the

right; that she could not shift it; that the radio and wipers did not work and that at speeds of 35 to 40 m.p.h. it shimmied; that she immediately complained to the salesman about the steering; that she took the car back about twelve times during the first month she possessed it; that from the date of purchase to January 1961 the car has been driven about 4000 miles and that when she testified (October 1961) it had been driven between 7000 and 8000 miles; that she would not have bought the car had she known it had been in a "wreck"; that only she and her husband drove the car; that it has been in an accident which damaged the left front fender since she acquired it; that she told the defendant she was going to return the automobile but never did so. Mr. Nix corroborated the operational difficulties as to which his wife had testified.

The judge made special findings as follows:

"The court finds that there was no fraud, deceit or breach of warranty, express or implied, by the defendant in the sale of the motor vehicle to the plaintiff; that the plaintiff knew prior to the sale that this vehicle had been in a collision by and was repossessed from the previous owner; that it was completely and properly repaired and in good running order (except for some minor adjustments and repairs which the defendant made at the request of the plaintiff within one week after delivery) when it was delivered to the plaintiff on or about Sept. 22, 1959; that plaintiff has continued to operate and still operates this vehicle

and has made no complaints to the defendant, except as above noted, until plaintiff's attorney sent a letter on July 6, 1960; that the plaintiff at no time has made any tender of the vehicle to defendant in an effort to recind the sale, and the court finds for the defendant."

█ The only express representation alleged to have been made which might raise a question of express false warranty or misrepresentation was that the automobile had been misrepresented as a one-owner automobile. All other evidence as to its shortcomings bore on the question of its merchantability. Whether a representation that the auto was a one-owner car was a misrepresentation of a material fact or seller's talk, may be open to a difference of opinion, but the short answer is that the judge was not required to believe that the alleged representation had been made. His findings clearly indicated that he rejected it.

█ Nor was the judge required to conclude that the representation, if made, induced the purchase to any extent whatever. *Brockton Olympia Realty Co. v. Lee,* 266 Mass. 550, 558, 561, 562. In our opinion the judge was warranted in finding no breach of express warranty and no deceit. It was a question of fact and his findings are not reviewable. *Mastercraft Wayside Furniture Co. v. Sightmaster Corp.,* 332 Mass. 385, 386, 387.

█ Even if it be a fact that the extent of the damage to the automobile while Mrs. Bennett was its owner was not disclosed to

the plaintiff in the defendant's behalf, nevertheless, we must hold that such silence did not constitute a breach by the defendant of any legal duty. "Mere silence does not usually amount to a breach of duty" and the parties to this action did not stand in such a relation to each other that any responsibility arose which required disclosure. *Goodwin v. Agassiz,* 283 Mass. 358, 362. "Where as here the relationship (between the plaintiff and defendant) is that of buyer and seller mere silence or failure to disclose known facts does not amount to fraud." *Brockton Olympia Realty Co. v. Lee,* 266 Mass. 550, 561.

The report shows that the judge was warranted in finding that there was no breach of implied warranty, either of merchantability, U.C.C., G. L. c. 106, §2-314, or fitness for a particular purpose, §2-315. §2-314, 2(c) provides that goods to be merchantable must at least be such as are fit for the ordinary purpose for which such goods are used. §2-315 pertains to the related implied warranty of fitness. The description of "merchantable" in the U.C.C. is the same as that term was understood before the Code became effective on October 1, 1958. Under the Sales Act, prior to the Code, it was understood that "merchantable quality usually means that goods shall be reasonably suitable for the ordinary uses for which goods of that kind and description are sold." *Mead v. Coca-Cola Bottling Co.,* 329 Mass. 440, 442. We think the judge was warranted in concluding that

although the automobile had been in an accident which damaged it substantially to the extent of $1200 that it was, in effect, rendered by repairs merchantable and reasonably suited for the purpose for which it was to be used, and indeed has been continuously used since its purchase, and that there was, therefore, no breach of the implied warranties of merchantability and fitness.

Whether timely notice was given by the defendant of warranty has not been argued and has therefore not been considered in this opinion. On this subject see U.C.C., G. L. c. 106, §2-607(3) (a). *Schuler v. Union News Co.*, 295 Mass. 350, 354; *Howard v. Lowell Coca -Cola Bottling Co.*, 322 Mass. 456, 460; *Mastercraft Wayside Furniture Co v. Sightmaster Corp.*, 332 Mass. 383, 387; *Lieberman v. W. M. Gulliksen Mfg. Co.*, 332 Mass. 439, 442, 443.

No offer of proof of the evidence expected in answers to thirteen of the fifteen questions asked by the plaintiff on direct examinations, which the judge excluded, was made by the plaintiff. On that ground alone, that is, the absence of offers of proof, it cannot be said that the questions were erroneously excluded. *Ford v. Worcester,* 339 Mass. 657, 658. See also *Stockbridge v. Mixer,* 227 Mass. 501; *Canney v. Carrier,* 333 Mass. 382, 384.

The two questions which the judge excluded and which were followed by offers of proof were directed to Mrs. Nix on direct and re-direct examination. One question was

whether when she took the automobile to the repair shop in December 1959, or January 1960, she received information that the automobile had been in an accident prior to the time she purchased it. The offer of the expected answer was "yes". The other question to Mrs. Nix was when she talked to the defendant's salesman about returning the car whether or not he told her that the plaintiff was obligated to pay all the remaining notes on the conditional sales contract to the CIT, whether the automobile was returned or not. The expected answer to this question was also stated to be "yes". The grounds for exclusion of those two questions do not appear, but their exclusion can be sustained on the ground that both were leading questions. But on broader grounds they were rightly excluded. There was no duty on the defendant's part to inform the plaintiff of the prior accident. Certainly there was no duty on the part of the employee of the repair shop to disclose to anyone any knowledge he may have had of the accident. The only relationship which the defendant bore to the repair shop was that of customer.

The plaintiff presented seventeen requests for rulings of law. The judge allowed requests that findings *were warranted* for the plaintiff under the several counts in the declaration, including deceit for false warranty and for failure to disclose that the automobile had been in a serious accident. This was accepted practice to allow such requests and then find for the defendant. *Hoffman v.*

*Chelsea,* 315 Mass. 54; *Liberatore v. Framingham,* 315 Mass. 538. The judge could have denied the ruling based on deceit for failure to disclose, but the plaintiff was not harmed by its allowance.

■■ The judge denied requests that a repossessed automobile does not include one which has been substantially wrecked and that such an automobile did not meet the requirements of the legitimate used car, in effect, that the automobile was not merchantable. There was evidence to support the finding that after the accident the automobile had been restored by complete and proper repair and was in good running order except for some minor adjustments and repairs which the defendant made at the plaintiff's request within one week after delivery. Accordingly, the request could not have been allowed. There was competent evidence to warrant the finding that the automobile was merchantable and fit for the purpose for which it was sold and purchased.

■ The requests that the evidence required a finding that the vehicle had not been repossessed at all from its former owner was rightly denied. There was evidence that it was. The request could not have been given. *Perry v. Hanover,* 314 Mass. 167, 170.

■ There was no prejudicial error in denying the request that the defendant charged the plaintiff far in excess of the guaranteed price on September 22, 1959. In the first place the price was agreed upon and the amount

of consideration is a matter which the law leaves to the parties. *Dean v. Carruth,* 108 Mass. 242; *Kaplan v. Suher,* 254 Mass. 180; *Manson v. Flanagan,* 233 Mass. 150. In the second place there was evidence that the defendant bought the car in its damaged condition for $1850 from the finance company which had repossessed it and that the repairs had cost about $1200. The time sale price to the plaintiff was $3075, including finance charges of $680.44. There was therefore no basis for the contention that the price to the plaintiff was in fact unconscionable.

The requests that the evidence requires a finding that when he purchased the automobile the plaintiff was unaware that it had previously been involved in a wreck was rightly denied. The requests could not have been given. There was evidence to the contrary. The plaintiff admitted he knew that it was a repossessed car. The defendant's treasurer testified that he heard the salesman tell the plaintiff that the automobile had been in an accident. Such evidence precluded the allowance of the requested ruling. *Perry v. Hanover,* 314 Mass. 167, 169, 170.

The remaining requests which the judge denied related to matters already considered. They related to alleged concealment on the plaintiff's part that the automobile had been in a wreck; that all the elements of deceit are present; that the plaintiff's damages are more than nominal and are substantial, and how the damages should be measured. They

also related to views of the evidence which the judge was not required to adopt, such as repairs not being able to restore the automobile to the condition it was in before the accident and that the repairs were $600 and not approximately $1200, views which the judge plainly had rejected. *Franklin Park Lumber Company v. Hule-Hodge Lumber Company*, 246 Mass. 157, 159; *Fain v. Fitzhenry-Guptill Co.*, 335 Mass. 6. The requests in our opinion were rightly denied.

As no error of law has been shown which we deem prejudicial to the plaintiff, the report should be dismissed.

## II.

 Following the findings for the defendant, the plaintiff filed a motion for a new trial. There was a hearing on that motion on January 29, 1962. The docket shows that the motion was denied without costs on the same day. Before arguments on the motion, the plaintiff presented requests for rulings of law which the judge deemed inappropriate at such a hearing. He took no action on the requests except to permit the plaintiff to file them with the clerk. The requests are not reported. For reasons which shall appear we need not consider the effect of the judge's failure to pass upon them. See *Kelleher v. Farrell*, 339 Mass. 756.

On February 14, 1962 the plaintiff filed a draft report in which he claimed to be aggrieved by the denial of his motion for a new

trial and his requests for rulings. On February 26, 1962 the defendant filed a motion to dismiss the plaintiff's draft report for failure to comply with Rule 27 of the District Courts (1952). On March 12, 1962, after a hearing, in open court and in the presence of counsel, the judge reports that he allowed the defendant's motion to dismiss and ordered the draft report stricken from the files of the court. The report of that action brings the matter before us for our determination.

Rule 27 requires a party claiming to be aggrieved by a ruling, such as the ruling denying the plaintiff's motion for a new trial, to file a claim of report with the clerk within five days after notice of the finding or decision. The rule provides that a draft report within the five day period shall be deemed to include a request for a report.

The plaintiff contends that his motion for a new trial was not denied on January 29 in the presence of counsel and shows a letter by the defendant's counsel to the defendant indicating that the matter had been taken under advisement by the judge. However, the report states that the defendant's counsel stated it to be his belief based on recollection that the report had been denied on January 29 and was not taken under advisement. The plaintiff's counsel further claims that he had no notice of the denial of his motion for a new trial until he made inquiry at the clerk's office on February 8 and that the filing of his draft report on February 14 was, therefore, timely.

The finding of the judge, supported by the docket entry, and the statement of defendant's counsel that the judge denied the plaintiff's motion for a new trial on January 29 in the presence of counsel in open court is conclusive, notwithstanding statements by plaintiff's counsel of an understanding to the contrary. *Kelsey v. Hampton Court Hotel Co.*, 327 Mass. 150, 152; *Irving v. Bonjorno,* 327 Mass. 516, 518. Accordingly, the filing of a draft report on February 14 was not filing within five days after notice of the finding or decision on January 29 as required by Rule 27. The draft report was rightly dismissed.

An order should be entered dismissing the report.

Maurice H. Kramer, of Boston, for the Plaintiff.
James J. Nixon, Jr., of Boston, for the Defendant.