*Northern District*

# No. 8292

# GISELE CHARNEY AND MICHAEL CHARNEY

v.

# OCEAN PONTIAC, INC. and GENERAL MOTORS CORPORATION

Argued: Feb. 27, 1975. Decided: Sept. 3, 1975.

Case tried to *Tiffany, J.,* in the District Court of Peabody. Number: 32815/73.

Present: Bacigalupo, J., (Presiding), Flynn, and Flaschner, J.J.

**Flaschner, J.** The defendant, Ocean Pontiac, Inc., an automobile dealer, sold a new automobile manufactured by the defendant General Motors Corporation, to the plaintiff, Gisele Charney. In this action she claims damages from both defendants in three counts based on (1) breach of the implied warranty of merchantability, (2) rescission or revocation of acceptance, and (3) misrepresentation. In addition,

each count of the declaration[1] alleges a breach of an express warranty by both defendants that the automobile would be safe and free from defects. In a fourth count the plaintiff, Michael Charney, claims consequential damages, but since the report includes no evidence on his claim, we shall deal only with the claims of the plaintiff, Gisele Charney. For the same reason we do not concern ourselves with the allegations of misrepresentation.

The evidence tended to show the following: On October 10, 1972 the plaintiff bought a new automobile from the defendant dealer. Shortly thereafter the plaintiff discovered a defect in the water tight integrity of the automobile. From October 24, 1972 to July 9, 1973 the plaintiff returned it to the dealer for inspection and repairs of said defect on ten separate occasions. Representatives of the manufacturer were called in. On or about July 13, 1973 plaintiff drove the automobile to California where she took up residence. On January 15, 1973 the plaintiff had tendered a letter through her attorney to the dealer in which she asserted her revocation of acceptance of the automobile pursuant to G. L., c. 106, §2-608. The only evidence introduced on damages by the plaintiff, which was not disputed, showed that the difference in value between the price of the new automobile and its diminished value due to the alleged defect as of January 15, 1973 was $1090. The record (docket

---

[1] Although the declaration was not so fully summarized in the report nor a copy attached thereto, we have found it necessary to refer to it in order to assist us in determining the correctness of the trial justice's findings, particularly his finding referred to below that the satisfaction of the plaintiff's action against the manufacturer was fatal to the plaintiff's action against the dealer.

entries) also reveals that the plaintiff's claim against the manufacturer was settled for $125. On September 25, 1973 an agreement for judgment for the plaintiff against the manufacturer was filed in that amount without costs or interest, and on April 23, 1974 an entry was made that this judgment was satisfied.

Thereafter a trial was held on the plaintiff's claims against the dealer. The trial justice's rulings on the plaintiff's requests are fully explained in his special findings. These included findings that (1) a structural defect in the water tight integrity of the automobile existed at the time of its delivery to the plaintiff by the dealer, (2) any attempted rejection was invalidated by the plaintiff's continued use of the automobile to her own end, (3) the manufacturer and not the dealer gave the plaintiff an express warranty in which there was no attempted disclaimer of any implied warranty, (4) the particular defect in the automobile was not subject to discovery by the dealer before the sale, (5) the attempted repairs were authorized by the manufacturer, and (6) there was a satisfaction of the plaintiff's action against the manufacturer as a co-defendant in this case which "was fatal to the plaintiff's action against Ocean Pontiac as I do not find a breach of implied warranty of merchantability against Ocean Pontiac." Hence, the trial justice found for the defendant dealer, Ocean Pontiac, Inc.

We agree that the evidence warranted a finding that the plaintiff's revocation was rendered ineffective. We disagree with the trial justice's conclusion that there was no breach of implied warranty by the dealer. However, the plaintiff's recovery on this ground

against the dealer is precluded by the plaintiff's agreement of judgment with the manufacturer and the satisfaction of that judgment. We affirm the trial justice's finding that the satisfaction of this judgment was fatal to the plaintiff's claim.

## Revocation of Acceptance

A buyer's revocation is subject to the provision that he "has the same rights and duties with regard to the goods involved as if he had rejected them." UCC 2-608 (3). Although one of these duties is not to exercise ownership, UCC 2-602 (2) (a) and (c), there is no express language about use. Apparently the test is one of reasonableness and is a question of fact. *Fablok Mills, Inc. vs. Cocker Machine and Foundry Co.,* 310 A.2d 491, 495 (N.J. Super. 1973). While there is said to be a general rule against upholding revocation of acceptance where a buyer continues to use the goods, he should not be "confronted with the grim choice of either continuing to use some of the machines or going out of business," as in *Fablok,* supra at 495, or being forced to choose between giving up that which is essential to a minimum standard of living and giving up legal rights to assert a claim for damages, as in *Minsel v. El Rancho Mobile Home Center, Inc.,* 188 N.W.2d 9 (Mich. App. 1971).

A number of courts have specifically held that continued use of an automobile is enough to defeat a buyer's revocation, rejection or attempted rescission. *Bereman v. Burdolski,* 460 P.2d 567 (Kan. 1969); *Villarreal v. Boggus Motor Co.,* 471 S.W.2d 615 (Tex. Civ. App. 1971); *Cooper v. Mason,* 188 S.E.2d 653 (N.C. App. 1972); and *Walz v. Chevrolet Motor Di-*

*vision,* 307 A.2d 815 (Del. Super. 1973). In the instant case the plaintiff's continued use of the automobile in the face of her attempted revocation of acceptance warranted the trial justice's finding. This imported the absence of such special circumstances as to constitute an exception to the general rule against continued use.

## Breach of Implied Warranty

An implied warranty of merchantability did exist between the dealer and the plaintiff. UCC 2-314 provides in part: "(1) Unless excluded or modified by section 2-316,[2] a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." The dealer was unquestionably a merchant as defined in UCC 2-104. The finding by the trial justice that a structural defect in the water tight integrity of the automobile existed at the time of delivery to the plaintiff is well warranted by the evidence and clearly satisfies the test of non-merchantability. That test, as stated in *Casagrande v. F. W. Woolworth Co., Inc.,* 340 Mass. 552, 555 (1960) and *Taylor v. Jacobson,* 336 Mass. 709, 716 (1958), is that a "retailer's implied warranty of merchantability of goods not of his manufacture is that they are reasonably suitable for ordinary uses for which goods of that description are sold . . ." See also *Johnson v. Fore River Motors, Inc.,* 26 Mass. App. Dec. 184, 194 (1963) which applies this test to a used automobile. In the case of a new automobile the test has been stated as follows: "[I]n the sale by a dealer or retailer of a brand new automobile, the dealer impliedly warrants that the automo-

---

2 Not relevant under the facts of this case.

bile is of merchantable quality and that the new car is fit to transport the driver and his passengers with reasonable safety, efficiency and comfort." *Berg v. Stromme,* 484 P.2d 380, 386 (Wash. 1971).

There is also a requirement that the buyer notify the seller of the breach within a reasonable time after he discovers or should have discovered it. UCC 2-607 (3). While the test of reasonable notice may be vague, *Ford v. Barnard, Sumner and Putnam Co.,* Mass. App. Ct. Adv. Sh. 207 (1973), in this case the return of the automobile ten times commencing fourteen days after the sale for the express purpose of complaining about the water leakage, the letter of January 15, 1973, and the absence of defendant's asserting lack of adequate notice make it abundantly clear that the notice test must be deemed to have been satisfied.

That no amount of inspection would have revealed the defect is not a defense according to any precedent we could find. See: Stanley, Defective Autos and the Code, 18 Clev. St. L. Rev. 527 (1969). A buyer is injured to the same extent whether or not a seller is able to uncover a defect by inspection. Moreover, the cost of remedying defective goods tends to be passed on by the seller to all buyers, thereby providing a source of protection to the injured buyer.

The fact that the dealer was not a party to an express warranty or that the manufacturer was also liable is likewise no defense. "[T]he implied warranty of merchantability applies equally to both the retailer and the manufacturer of goods." *Gillispie v. Thomasville Coca-Cola Bottling Co.,* 195 S.E.2d 45, 48 (N.C. App. 1973) cert. den. 196 S.E.2d 275 (N.C. 1973). In *Ford Motor Co. v. Taylor,* 446 S.W.2d 521 (Tenn.

App. 1969) cert. den. 10/6/69, the plaintiff sued the manufacturer and the dealer for a defective tractor. The trial court awarded damages against the manufacturer but dismissed the claim against the dealer. This claim was reinstated on appeal. The court rejected the dealer's argument that the manufacturer's warranty excluded or modified the UCC implied warranty of merchantability. The fact that the dealer in *Taylor,* supra at 532, had "exerted commendable efforts and incurred considerable expense in his efforts to correct the defects in the tractor" did not relieve the dealer of his "unconditional obligation" imposed by the UCC.

### Satisfaction of Judgment Against Co-Defendant Manufacturer

The trial justice's error in finding there was no breach of the implied warranty of merchantability by the dealer is, however, not prejudicial, because the plaintiff's satisfaction of her judgment against the co-defendant manufacturer precludes her recovery against the dealer. Although judgments may be rendered against both the dealer and the manufacturer for breach of the same duty, the plaintiff may obtain satisfaction of only one judgment. *Vanuxem v. Burr,* 151 Mass. 386 (1890); *Cote v. New England Navigation Co.,* 213 Mass. 177 (1912) and *Perry v. Oliver,* 317 Mass. 538 (1945). Restatement, Judgments, §§94-95. *Taylor,* supra at 532, states that if the dealer rather than the manufacturer is "called upon to pay the judgment herein, he will have his rights to seek reimbursement from Ford." In the instant case the declaration makes it apparent that the plaintiff's claims against the dealer and the manufacturer are the same.

The plaintiff's argument in her brief that the satisfaction of her claim against the manufacturer does not preclude a judgment in the same action against the dealer is based on her assumption that as of the date of purchase of the vehicle she was limited in her claim against the manufacturer to its express

warranty. However, not only does the plaintiff's decla-
ration contain a claim against the manufacturer for
breach of the implied warranty of merchantability,
but the elimination of privity as a condition of this
claim did not occur in 1973, as stated in plaintiff's
brief, but rather in 1971. UCC 2-318 as amended by
St. 1971, c. 670. It was approved on August 18, 1971
and section two provided that it "shall apply to sales
made on or after the effective date of this act." Hence,
it was clearly in effect when the automobile in this
case was purchased on October 2, 1972. Section one
of this amendment provided: "Lack of privity between
plaintiff and defendant shall be no defense in any
action brought against the manufacturer, seller or
supplier of goods to recover damages for breach of
warranty, express or implied, or for negligence, al-
though the plaintiff did not purchase the goods from
the defendant, if the plaintiff was a person whom
the manufacturer, seller or supplier might reason-
ably have expected to use, consume or be affected by
the goods. A manufacturer, seller or supplier may not
exclude or limit the operation of this section." It is
true that UCC 2-318 was also amended in 1973, but
that amendment extended the applicability of the sec-
tion to lessors and is not relevant to the question at
hand.

The citation by plaintiff of *Koellmer v. Chrysler
Motors Corp.,* 276 A.2d 807 (Conn. Circ. 1970) is
unavailing. On p. 812 the court states: "We, of course,
do not pass on the question whether recovery in one
action is a bar to recovery in the other action." It may
well be that, whether the claim in this case is couched
in terms of implied or express warranty, for the pur-
pose of the question before us the cause of action is
the same, to wit, the sale of a defective automobile.
"This statement of a different form of liability is
not a different cause of action, provided it grows out
of the same transaction, act or agreement, and seeks
redress for the same wrong." *Mackintosh v. Cham-
bers,* 285 Mass. 594, 596 (1934) and *Fassas v. First*

*Bank and Trust Co. of Chelmsford,* 353 Mass. 628, 629 (1968). However, in this case we are not confronted with a problem of defining the same cause of action. Since the UCC implied warranty of merchantability applied equally to the dealer and the manufacturer, and the absence of privity was no longer a bar as to the latter, the satisfaction of the judgment against the manufacturer, in our opinion, must preclude recovery against the dealer.

There being no prejudicial error, **the report is dismissed.**